IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL SANDOVAL,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER SUSTAINING DEFENDANT'S OBJECTION AND UPHOLDING ALJ'S DISABILITY DETERMINATION**<br><br>Case No. 2:18-cv-294-RJS-EJF<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Michael Sandoval initiated this action to challenge an Administrative Law Judge's (ALJ) determination that Sandoval is not disabled under the Social Security Act. Magistrate Judge Furse issued a Report and Recommendation (Recommendation) that the undersigned remand the case to the ALJ for further review.[1] Defendant, the Commissioner of Social Security (the Commissioner), timely objected to the Recommendation, arguing remand is inappropriate and that the ALJ's decision should be affirmed.[2] For the reasons explained below, the court SUSTAINS the Commissioner's objection and upholds the ALJ's disability determination.

## BACKGROUND

### I.    Claimant Sandoval

On January 23, 2015, Sandoval filed for disability benefits, alleging a disability onset date of July 31, 2002.[3] Sandoval was 52 years old when he applied for disability, with a high

---

[1] Dkt. 24.

[2] Dkt. 25.

[3] Dkt. 10, Administrative Record (A.R.) at 15.

1

school level education.[4] Sandoval alleged disability based on numerous physical and mental ailments, including degenerative disc disease, radiculopathy, panic attacks, generalized anxiety disorder, shoulder problems, wrist problems, double inguinal hernia, and skin issues.[5]

## II. Proceedings Prior to This Court's Review

### A. Social Security Appeal Process

The Social Security Administration initially denied Sandoval's disability claim on July 15, 2015, and again, upon reconsideration, on September 9, 2015.[6] Sandoval requested a hearing before an ALJ, which was held on July 18, 2017.[7] Following the hearing, the ALJ issued a decision finding that Sandoval is not disabled.[8]

The ALJ's decision followed the Social Security Administration's five-step sequential evaluation process for determining whether a claimant is disabled.[9] At step one, the ALJ determined Sandoval had not engaged in substantial gainful activity since he applied for disability.[10]

At step two, the ALJ found that Sandoval suffered from several severe, medically determinable impairments, including mild degenerative changes in the right AC joint, degenerative changes in the lumbar spine, post-traumatic stress disorder, and panic disorder.[11]

---

[4] *Id.* at 25.

[5] *Id.* at 182.

[6] *Id.* at 15.

[7] *Id.*

[8] *Id.* at 12–26.

[9] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (outlining the five-step disability evaluation).

[10] A.R. at 17.

[11] *Id.*

At step three, the ALJ considered whether Sandoval's mental impairments met what are known as the "paragraph B criteria."[12] This required the ALJ to determine what, if any, mental impairments Sandoval suffered in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing himself.[13] These four broad functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme.[14] The ALJ found that Sandoval had only moderate impairments in the first three categories and a mild impairment in the fourth category.[15] Accordingly, the ALJ concluded Sandoval's impairments were not severe enough to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[16]

Before turning to step four, the ALJ assessed Sandoval's residual functional capacity (RFC):

> I find that the claimant has the residual functional capacity to perform light work . . . except he is able to lift and/or carry 10 pounds up to 2/3 of an 8-hour workday and 20 pounds up to 1/3 of [an] 8-hour workday; stand and/or walk for 6 hours; sit for 6 hours; he is unable to climb ladders, ropes, or scaffolds, but can perform all other postural activities up to 1/3 of [an] 8-hour workday; he should avoid concentrated exposure to hazards; mentally, he is able to perform[] simple, unskilled work in a low stress work environment, which is low production work that requires contact with coworkers or the public no more than 1/3 of [an] 8-hour workday.[17]

---

[12] *Id.* at 19–20; *see also* Dkt. 25 at 2 ("Because the mental impairment listings describe these broad functional areas in the 'B' paragraph of each listing, the functional areas are commonly referred to as the 'B criteria' or 'paragraph B criteria.'").

[13] A.R. at 19.

[14] 20 C.F.R. pt. 404, subpt. P § 404.1520a(c)(4).

[15] A.R. at 19–20.

[16] *Id.* at 19.

[17] *Id.* at 20.

The ALJ formulated Sandoval's RFC after considering all the medical records, evidence, and opinions in the record. Specifically, the ALJ gave great weight to the state agency medical consultant opinions that were provided both at the initial and reconsideration levels.[18] The ALJ also considered physical examinations in the record, including a physical consultative examination Dr. Richard Ingebretsen conducted.[19] Dr. Ingebretsen noted that Sandoval exhibited signs of "symptom magnification," which made it difficult for Dr. Ingebretsen to assess Sandoval's pain.[20] Dr. Ingebretsen also doubted Sandoval's claim that he could not lift more than five pounds considering Sandoval's well-developed shoulder, chest, and arm muscles.[21]

The ALJ also considered a Functional Capacity Evaluation conducted by Mark Anderson, a physical therapist.[22] Anderson's evaluation concluded that Sandoval was limited to a sedentary level in lifting and was limited in pushing and pulling.[23] The ALJ gave Anderson's opinion little weight, however, because it was inconsistent with Dr. Ingebretsen's physical examination.[24]

At step four, the ALJ found that Sandoval had no relevant past work.[25]

Finally, at step five, after considering Sandoval's age, education, work experience, RFC, and testimony from a vocational expert, the ALJ concluded Sandoval "is capable of making a

---

[18] *Id.* at 23.

[19] *Id.* at 22.

[20] *Id.* ("He had no pain to his back when he pressed on it while listening to his heart, but pain to very light touch when Dr. Ingebretsen pressed there later. In addition, he had a negative straight leg test when distracted, but positive when testing for pain. He had over reaction to stimulus and he had break way motion when testing his legs for strength. He had 5/5 on the Waddell's test . . . .").

[21] *See id.*

[22] *Id.* at 24.

[23] *Id.*

[24] *Id.*

[25] *Id.*

successful adjustment to other work that exists in significant numbers in the national economy."[26] For those reasons, the ALJ determined Sandoval is not disabled.[27]

On December 6, 2017, Sandoval appealed the ALJ's decision to the Social Security Administration's Appeals Council.[28] The Appeals Council denied Sandoval's request to review the ALJ's decision.[29] That denial rendered the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review.[30]

### B. Federal Court Review

Sandoval filed this action challenging the Commissioner's disability determination on April 13, 2018.[31] The matter was referred to Judge Furse,[32] who issued a Recommendation on September 14, 2019.[33] Specifically, the Recommendation concluded: (1) the ALJ did not err in his consideration of Anderson's opinion but that (2) the case should nonetheless be remanded to the ALJ because he failed to explain adequately how Sandoval's RFC accounts for Sandoval's moderate mental limitations. Having determined remand was needed, Judge Furse did not reach Sandoval's final contention that the ALJ also erred when he concluded at step five that Sandoval was not disabled under Medical-Vocational Guideline Rule 201.12 (Grid Rule 201.12).

---

[26] *Id.* at 26.

[27] *Id.*

[28] *Id.* at 156–58.

[29] *Id.* at 1–4.

[30] *See* 20 C.F.R. § 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.").

[31] Dkt. 3.

[32] Dkt. 16.

[33] Dkt. 24.

The Commissioner timely objected to the Recommendation, challenging only the conclusion that the ALJ erred in his consideration of Sandoval's moderate mental limitations.[34] Although Sandoval responded to the Commissioner's objection, he did not lodge any separate objections.[35]

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 72(b)(2), a party may file "specific written objections" to a magistrate judge's proposed report and recommendation. The court reviews de novo the parts of the report and recommendation to which a party has properly objected.[36] As for the unobjected to portions of the report and recommendation, the Supreme Court has suggested no further review by the district court is required, but neither is it precluded.[37] This court reviews unobjected to portions of the report and recommendation for clear error.[38]

When reviewing the ALJ's decision, the court must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

---

[34] Dkt. 25.

[35] Dkt. 26.

[36] Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court.") (citations omitted).

[37] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("The [Federal Magistrates Act] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* at 154 (noting that "it is the district court, not the court of appeals, that must exercise supervision over the magistrate," so that "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard").

[38] *See, e.g., Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made [to a magistrate judge's report and recommendation], the district court judge reviews those unobjected portions for clear error.") (citations omitted); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

standards were applied.[39]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]  And "[i]n reviewing the ALJ's decision, [the court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."[41]

## ANALYSIS

The court reviews the Recommendation in three parts.  First, the court reviews for clear error the Recommendation's conclusion that the ALJ did not err in assessing Anderson's opinion.  Second, the court reviews de novo the Recommendation's conclusion that the ALJ erred in how he evaluated Sandoval's moderate mental limitations.  Third, the court reviews de novo whether the ALJ properly concluded Sandoval is not disabled under Grid Rule 201.12.[42]

### I.     The Magistrate Judge Did Not Err in Concluding the ALJ Properly Discounted Anderson's Opinion

Sandoval's primary argument challenging the ALJ's decision was that Sandoval's RFC should have limited him to "sedentary work."[43]  Sandoval contended Anderson's March 2017 Functional Capacity Evaluation proves as much because it concluded Sandoval was "limited to the *Sedentary Lift* category for all his loading or material handling tasks . . . ."[44]  Thus, given Anderson's objective assessment, Sandoval asserted the ALJ erred by affording Anderson's opinion little weight in formulating Sandoval's RFC.

---

[39] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[40] *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks and citation omitted).

[41] *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks and citation omitted).

[42] Because the Magistrate Judge did not consider this issue, de novo review is necessary.  *See Summers*, 927 F.2d at 1167 ("[T]he district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports.  In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").

[43] *See* Dkt. 18 at 7–8, 11.

[44] A.R. at 350.

The Magistrate Judge disagreed, and this court finds no error in that conclusion.  After identifying the applicable legal standards, the Magistrate Judge carefully considered and rejected Sandoval's arguments.  Indeed, the Magistrate Judge concluded the ALJ properly discounted Anderson's evaluation because it was inconsistent with the record as a whole.[45]  Specifically, Sandoval's previous physical examination with Dr. Ingebretsen contradicted many of Anderson's conclusions.[46]  Moreover, the Magistrate Judge noted that an ALJ's opinion is sufficient "if it permits [the court] to follow the adjudicator's reasoning."[47]  Because the Magistrate Judge could ascertain why the ALJ gave little weight to Anderson's evaluation, the Recommendation correctly concluded the ALJ did not err by discounting Anderson's conclusions.

In short, the court finds no error in the Magistrate Judge's decision not to remand based on how the ALJ treated Anderson's evaluation.

## II. The ALJ Sufficiently Incorporated Sandoval's Mental Impairments into the RFC

Before the Magistrate Judge, Sandoval argued the ALJ failed to consider all of Sandoval's psychological impairments when determining his RFC.  Specifically, Sandoval faulted the ALJ for not sufficiently incorporating into the RFC the moderate mental limitations (*i.e.*, the paragraph B limitations) the ALJ assessed under step three of the disability evaluation process.  The Commissioner countered that "the Tenth Circuit . . . has rejected the argument that an RFC for simple or unskilled work does not address moderate limitations in the paragraph B criteria."[48]

---

[45] Dkt. 24 at 11.

[46] *Id.*

[47] *Id.* (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012)).

[48] Dkt. 21 at 22–23 (citing cases).

The Magistrate Judge sided with Sandoval, holding that the ALJ's failure "to make more detailed findings" concerning Sandoval's moderate psychological limitations was reason to remand the case.[49] The Recommendation indicated the ALJ was required to explain either how the RFC accounted for the moderate psychological limitations the ALJ previously identified or why he omitted from the RFC additional restrictions despite Sandoval's moderate limitations.[50]

In objecting to the Recommendation, the Commissioner argues the Magistrate Judge "misread agency Rulings and Tenth Circuit precedent" and that the law is clear an RFC limiting a claimant to unskilled work adequately accounts for moderate mental limitations.[51] In response, Sandoval acknowledges that "under certain circumstances simply stating that the Applicant can do 'simple and unskilled' work would suffice" but argues without explanation that "it does not suffice under the present circumstances."[52] The court agrees with the Commissioner.

In considering this issue, the Magistrate Judge relied on two Tenth Circuit decisions: *Vigil v. Colvin*[53] and *Miranda v. Barnhart*.[54] In *Vigil*, the claimant advanced the same argument Sandoval presents here—namely, "the ALJ should have included in his RFC his specific concentration, persistence and pace limitations, rather than account for those limitations by restricting his RFC to unskilled . . . work."[55] The *Vigil* court rejected that argument, however,

---

[49] *Id.* at 13–14.

[50] *Id.*

[51] Dkt. 25 at 1, 4–10.

[52] Dkt. 26 at 3.

[53] 805 F.3d 1199 (10th Cir. 2015).

[54] 205 F. App'x 638 (10th Cir. 2005).

[55] 805 F.3d at 1203.

holding that, by limiting the claimant to unskilled work, "the ALJ accounted for [Claimant's] moderate concentration, persistence, and pace problems in his RFC."[56]

Although *Vigil* would seem to foreclose Sandoval's argument, the Magistrate Judge pointed to a qualification in that decision that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."[57] The Magistrate Judge further noted that the ALJ in *Vigil* made additional evidentiary findings linking the claimant's moderate limitations to his RFC. From this, the Magistrate Judge concluded that—absent explicit consideration by the ALJ of how a claimant's moderate limitations impact the RFC—an ALJ necessarily fails to address adequately a claimant's mental limitations identified at step three.[58]

The Magistrate Judge reached this conclusion in part by reading *Vigil* in light of *Miranda*, an unpublished decision rendered ten years before *Vigil* was decided.[59] In *Miranda*, the court remanded a case to the ALJ in part because the ALJ "erred in not further addressing" the claimant's moderate mental limitations when conducting the RFC assessment.[60] But *Miranda* does not stand for the broad proposition that any moderate limitations identified at steps two and three must be expressly included in the RFC. Rather, *Miranda* merely requires an ALJ to consider evidence of mental impairments when formulating the claimant's RFC.[61] To read *Miranda* otherwise would directly contradict *Vigil*'s subsequent conclusion that an RFC limiting

---

[56] *Id.* at 1204.

[57] *Id.*

[58] *See* Dkt. 24 at 13–14.

[59] 205 F. App'x 638 (10th Cir. 2005).

[60] *Id.* at 643.

[61] *See White v. Colvin*, No. 15-cv-27-CVE-FHM, 2016 WL 1175492, at *5 (N.D. Okla. Mar. 23, 2016) (rejecting plaintiff's argument that *Miranda* stands for the proposition that an ALJ's decision must be remanded where the ALJ fails to explicitly include moderate mental limitations in the RFC).

the claimant to unskilled work can adequately account for the claimant's moderate mental limitations.[62]

Indeed, several decisions rendered after *Vigil* confirm that a district court need not remand a Social Security decision simply because the ALJ fails to detail how moderate limitations identified at steps two and three impact the RFC overall.[63] Interpreting *Vigil*, the Tenth Circuit held in *Smith v. Colvin* that an ALJ did not err by failing to assess explicitly the claimant's moderate limitations in formulating the RFC.[64] There, the reviewing psychologist determined the claimant could engage in work that was "limited in complexity" and could manage social interactions that "were not frequent or prolonged."[65] Although the ALJ did not directly mention those moderate limitations in assessing the claimant's RFC, the ALJ concluded the claimant could not engage in face-to-face contact with the public and could engage only in simple and repetitive tasks.[66] This was enough for the Tenth Circuit to conclude the ALJ had sufficiently incorporated into the RFC the claimant's moderate mental limitations.[67]

The *Smith* court reached its conclusion after discussing at length a nearly identical argument raised by the claimant in *Lee v. Colvin*. In *Lee*, the Tenth Circuit rejected a claimant's contention that an ALJ is required to expressly incorporate moderate limitations into the RFC.[68] Noting *Lee*'s persuasive value, the Tenth Circuit concluded in *Smith*, "[t]he administrative law

---

[62] *See Vigil*, 805 F.3d at 1204 (concluding that limiting claimant to unskilled work "adequately took into account his moderate limitations in concentration, persistence, and pace").

[63] *See Smith v. Colvin*, 821 F.3d 1264, 1268–69 (10th Cir. 2016); *Lee v. Colvin*, 631 F. App'x 538, 541–42 (10th Cir. 2015).

[64] 821 F.3d at 1268–69.

[65] *Id.* at 1268.

[66] *Id.* at 1269.

[67] *Id.*

[68] 631 F. App'x at 541–42.

judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities."[69]

The question a district court must answer in light of *Vigil*, *Smith*, and *Lee*, then, is not whether the ALJ specifically referenced in the RFC the paragraph B limitations identified earlier in the disability evaluation process. Rather, the question is whether the ALJ sufficiently incorporated the paragraph B limitations when formulating the claimant's RFC.[70] That is, if it is clear the RFC sufficiently cabins the range of work a claimant could be expected to perform—by, for instance, limiting the claimant to unskilled work—a court need not remand an ALJ's decision to require the ALJ to clarify how the RFC specifically accounts for the paragraph B limitations.[71]

Thus, the court must decide whether the RFC adequately accounts for Sandoval's moderate mental limitations the ALJ identified at step three. The court concludes that it does.

To recall, the ALJ determined at step three that Sandoval was moderately limited in three categories: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace.[72] A "moderate" paragraph B limitation

---

[69] 821 F.3d at 1269.

[70] *See Lee*, 631 F. App'x at 541–42 (rejecting claimant's challenge that the ALJ improperly omitted moderate limitations in the RFC assessment because the ALJ incorporated the moderate limitations when evaluating the claimant's RFC).

[71] *Vigil*, 805 F.3d at 1204; *Smith*, 821 F.3d at 1268–69; *Lee*, 631 F. App'x at 541–42; *see also Knight v. Colvin*, No. CV 15-0882 KBM, 2016 WL 9489144, at *6 (D.N.M. Dec. 5, 2016) (noting that under *Smith*'s rationale "the Court is constrained to find that here the moderate limitations identified . . . were adequately addressed by the ALJ's decision to limit Plaintiff's RFC to simple, unskilled work").

[72] A.R. 19–20.

means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."[73]

Here, like the ALJs in *Smith* and *Lee*, the ALJ did not repeat the moderate limitations he identified at step three when determining Sandoval's RFC. But the ALJ nonetheless incorporated Sandoval's paragraph B limitations into the RFJ.[74] In explaining the RFC, the ALJ stated "mentally, [Sandoval] is able to perform simple, unskilled work in a low stress environment, which is low production work that requires contact with coworkers or the public no more than 1/3 of [an] 8-hour workday."[75] From the foregoing, it is evident the ALJ incorporated Sandoval's moderate mental limitations into the RFC.[76] First, the ALJ accounted for Sandoval's social interaction limitation by limiting Sandoval to work that requires contact with coworkers or the public no more than 1/3 of an 8-hour workday. Second, the ALJ incorporated Sandoval's understanding and concentration limitations when he limited Sandoval to simple, unskilled work in a low stress environment. As the Tenth Circuit noted in *Vigil*,

> Unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting."[77]

None of Sandoval's moderate limitations would prevent him from carrying out such work. Thus, the ALJ's conclusion that Sandoval could perform unskilled work is consistent with moderate

---

[73] 20 C.F.R. pt. 404, subpt. P, App. 1, pt. A2 § 12.00(F)(2)(c).

[74] *See Smith*, 821 F.3d at 1269 (concluding the ALJ sufficiently incorporated the respective moderate limitations "by stating how the claimant was limited in the ability to perform work-related activities").

[75] A.R. 20.

[76] Indeed, the ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." A.R. 20.

[77] 805 F.3d at 1204 (alterations in original) (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)).

limitations in understanding and concentration, and the court finds the ALJ adequately incorporated Sandoval's paragraph B limitations into the RFC.[78] Accordingly, the court will not adopt the recommendation to remand the case to the ALJ.

### III. The ALJ Properly Concluded Sandoval Is Not Disabled Under Grid Rule 201.12

Sandoval argued the ALJ erred by failing to find Sandoval disabled under Grid Rule 201.12. The Magistrate Judge did not reach this question because she recommended remanding the case to the ALJ on other grounds. Because the Magistrate Judge did not offer a recommendation on this issue, the court reviews the parties' arguments de novo.[79]

Grid Rule 201.12 applies to claimants whose RFCs are limited to sedentary work as a result of severe medically determinable impairments.[80] Under this Rule, a claimant with only a high school education and no previous work experience would be considered disabled.[81] Sandoval argues each of these conditions is met and that the ALJ should have found Sandoval disabled. The Commissioner responds that Sandoval is merely repackaging his argument that the ALJ should have limited Sandoval to sedentary work rather than light work. The court agrees with the Commissioner.

The parties do not dispute that Grid Rule 201.12 applies only if Sandoval's RFC is limited to sedentary work. But the ALJ limited Sandoval to light work.[82] Thus, Sandoval's Grid

---

[78] *See Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) ("[T]he limitations incorporated into [the claimant's] RFC assessment directly address the areas in which the ALJ found he had moderate difficulties. His moderate difficulty with social functioning is encompassed by the limitation of 'occasional contact with coworkers, supervisors and the general public.' His moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'") (internal citations omitted).

[79] *See supra* note 42.

[80] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[81] *See id.*

[82] A.R. at 20.

Rule argument is simply a roundabout way of arguing the ALJ should have limited Sandoval to sedentary work (and would have if the ALJ had properly considered Anderson's opinion). As noted above, however, this court agrees with the Magistrate Judge that the ALJ properly weighed Anderson's opinion.[83] Accordingly, the ALJ did not err in limiting Sandoval to light work, and he applied the correct legal standard in concluding Sandoval is not disabled under Grid Rule 201.12.

## CONCLUSION

For the foregoing reasons, the court SUSTAINS the Commissioner's Objection[84] to the Recommendation and UPHOLDS the ALJ's decision.

SO ORDERED this 22nd day of May 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[83] *See supra* Part I.

[84] Dkt. 25.